UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-21129-CIV-HIGHSMITH/DUBÉ

CONSENT CASE

CLINTON MOORE,

    Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____/

## MEMORANDUM ORDER

THIS CAUSE is before this Court on the Motion for Summary Judgment filed by the Plaintiff (D.E. #18)[1] and the Motion for Summary Judgment filed by the Defendant (D.E. #27) pursuant to the consent of the parties and an Order of Reference entered by the Honorable Shelby Highsmith, United States District Judge. The issue before the Court is whether the record contains substantial evidence to support the denial of benefits to the Plaintiff, Clinton Moore (hereinafter "Moore" or "Plaintiff").

### I. FACTS

On June 13, 2002, Moore filed an application for supplemental security income (SSI) alleging a disability onset date of June 7, 2002. (R. 60-61).[2] The application was denied initially and on reconsideration. (R. 35, 41). An initial hearing was held on May 12, 2005. (R. 293-322). Following

---

[1] A duplicate Motion for Summary Judgment was filed by the Plaintiff on February 4, 2008. (D.E. #21).

[2] All references are to the record of the administrative proceeding filed as part of the Defendant's answer.

a second hearing (R. 323-370), the ALJ issued a decision denying the request for benefits. (R. 18-29). A request for review filed with the Appeals Council was denied. (R.5-7).

First Hearing Testimony

The Plaintiff, age 56 at the time of the hearing, testified that he was born on April 12, 1949. (R. 308). Moore stated that although he drives, his son drove him to the hearing. (R. 308). The Plaintiff has a sixth grade education, can write but cannot read that well. (R. 314-315). The Plaintiff testified that he last worked in either 2002 or 2003 at a grocery store, but left due to back pain. (R. 308-310). He worked five to six days a week, eight to nine hours a day and was making $300.00 per week. (R. 309). Moore testified that his job duties included stacking between 100-200 cases of beer and soda. (R. 310).

Prior to working at the grocery store, the Plaintiff worked at Hern's Food Market as the head cashier for 18 years. (R. 316). Moore stated that his job duties included supervising three other employees; operating the cash register; recording beer and sodas by case; stacking the cooler and shelves; and mopping and buffing the floors. (R. 316-318). The Plaintiff testified that although he did not order merchandise or take inventory, he would inform the manager when the store ran out of beer or soda. (R. 328). Moore stated that at work he stood 6 hours per day, walked back and forth 7-8 hours in a 9 hour workday, and lifted more than 10 pounds. (R. 319-320).

The Plaintiff stated that he had never been treated by an orthopedist specialist, a neurologist, and that he had not gone for physical therapy. (R. 312). The ALJ ended the hearing and requested that the Plaintiff provide her with a more complete record of the medical evidence prior to a second hearing being scheduled. (R. 321).

Second Hearing Testimony

Moore testified that since the first hearing, he had not worked or required emergency hospital care. (R. 327). The Plaintiff stated that he lives by himself in a rented room in a house. Moore added that he had not consumed alcohol in two months but was still smoking almost a pack of cigarettes a day. (R. 328). Moore testified that he does his own laundry, cooks, sweeps his room, makes his bed, and sees his children three to four times per week. (R. 328-329).

The Plaintiff indicated that he held a prior job in housekeeping at Pro Player Stadium. (R. 330). Moore's duties included setting up for parties, shampooing the carpets and buffing the floors. (R. 330). Moore stated that the maximum he could lift was between 20 to 25 pounds. The Plaintiff testified that he worked at Pro Player Stadium five days a week, for eight to nine hours per day, for almost a year. (R. 331).

In addition to the Plaintiff's testimony, Jeanine Salek, a vocational expert, testified at the hearing. Ms. Salek characterized the Plaintiff's past work as follows:

> ... As a head cashier -- actually, that's just a cashier, checker. It's 211.462-014. It's an SVP of 3. It's semiskilled, and it's classified as light level work. And he also did stocking occasionally, stock work occasionally, as he said. So that would still be light work, but it would be 219.367-018, and that's an SVP of 3 also. However, there's stocking -- if you're doing it repetitively you can be, you can be performing at the medium level work. Pro Player Stadium, he's basically a cleaner. It's 381 point –
>
> ...
>
> Point 687 dash 018. It's an SVP of 2, and that's medium level work. And when he was stocking sodas basically it's just like being in a back room like in a warehouse, and it's stacking sodas when you're in a grocery store and that is 922.687-058. That's an SVP of 2, and that's also medium level work.

3

(R. 338-339).

The VE stated that based on the hypothetical questions posed by the ALJ, Moore would not be able to return to any of his previous jobs if required to stand all day. (R. 345). However, the VE added that if the Plaintiff would be able to stand for two hours, then take a break for 10-15 minutes, the Plaintiff would be able to perform his job as a cashier as it is usually performed. (R. 346). The VE concluded that the Plaintiff would be able to perform his job as a cashier, but not as a stocking clerk or cleaner. (R. 347).

The VE testified that the Plaintiff's skills and functions would be transferable to other jobs such as a parking lot cashier, 211.462-010 and a toll collector, 211.462-038. (R. 355-356). Ms. Salek stated that the Plaintiff's job, as he performed it, also included a combination of functions like stocking shelves, however, neither a parking lot cashier nor a toll collector have a combination of functions. (R. 357-358).

In addition to the testimony presented at the hearings, the ALJ reviewed the Plaintiff's medical records. On November 2, 2000, the Plaintiff had an x-ray taken of his left knee which revealed a large supra patellar effusion. (R. 151). Laboratory tests taken the same day revealed abnormal uric acid levels of 9.5. (R. 152-153).

On December 22, 2000, the Plaintiff was treated at Jackson Memorial Hospital with complaints of pain and edema in his left knee. (R. 288). The Plaintiff was injected with depomedrol and lidocaine intra articularly, and 100cc of fluid was removed from his left knee. Moore's uric acid levels were still 9.5. (R. 288).

On March 13, 2001, the Plaintiff was seen at the North Dade Health Center with complaints of pain and swelling in his left knee. (R. 148-149). An examination revealed gout and alcohol abuse.

(R. 148). An x-ray of the left knee revealed a moderately large joint effusion. (R. 141). The Plaintiff returned to the North Dade Health Center on March 27, 2001 and was again diagnosed with gout and alcohol abuse. (R. 147).

On March 23, 2002, Moore sought treatment at the Neurological Treatment Centers after being involved in an automobile accident on February 27, 2002. (R. 211-217). The Plaintiff complained of pain to his neck, upper/middle back and lower back; and stiffness of the neck. Additionally, Moore complained of tension, headaches and restlessness. (R. 213).

> A neurological examination revealed the following:
>
> The patient is alert and oriented times three. Memory is at 3/3. Cranial nerves II through XII were intact. Good finger to nose finger test. Cerebellar function testing revealed no dystaxia. Deep tendon reflexes of biceps, [triceps], brachioradialis, patella, and achilles were all grade 2 and symmetric. Rolling of the arms elicits fixation on the right. There was no motor loss in the upper or lower extremities. There was hypoalgesia overlying the right L5 dermatome. Gait is normal.
>
> Cerebrovascular function testing battery revealed: No bruits were detected at the carotid or subclavian sites. Craniocervical functional maneuver in the hyperextension/rotation position for 10 seconds was negative bilaterally.

(R. 215). X-rays of the cervical spine in the A-P and lateral projections showed no osseous or periosteal injury; no lytic or blastic changes; and anterior spurring at the C4/C5, C5/C6 and C6/C7 levels. (R. 216).

The Plaintiff's overall assessment was post-traumatic headaches; cervical sprain/strain with evidence of radiculopathy; thoratic sprain/strain; and lumbar sprain/strain. (R. 216). From March 22, 2002 through June 6, 2002, Moore attended physical therapy three times a week. (R. 176-196, 200-212, 218-255).

On April 2, 2002, Moore went to the North Dade Health Center with complaints of pain in his right testicle. The Plaintiff was referred to a urologist. (R. 142).

On April 18, 2002, Moore returned to the Neurological Treatment Center for a follow-up visit. (R. 197-199). The Plaintiff reported that he was only suffering from approximately 50% of his original symptoms. (R. 197). Moore was recommended to further physical therapy and an MRI of the lumbar spine. (R. 199).

On June 6, 2002, the Plaintiff was seen at the Neurological Treatment Center for final evaluation. (R. 169-175). An MRI of the lumbar spine revealed spondylitic changes of the lower lumbar spine with disc herniations at L4-L5 and L5-S1; there was also central canal stenosis at L5-S1. (R. 173). The final clinical impression was chronic cervical sprain/strain; chronic thoracic sprain strain; multiple lumbar disc herniation; and chronic lumbar sprain/strain. (R. 174).

On November 25, 2002, the Plaintiff was seen by Dr. Stephen A. Kotzen for a consultative physical evaluation. Moore stated that he is able to sit for one hour, shower and dress, put on shoes, walk 15 minutes and stand 20-30 minutes.(R. 264). Dr. Kotzen provided the following summary:

> ... this 53 year old man had injured his back while working over 20 years ago, but was able to resume full time work. In February, 2002, his car was rear ended, and he developed low back pain. An MRI (physician's report included) indicated disk herniation at L4-5 and L5-S1 and central canal stenosis at L5-S1. Back pain is confined to the lumbar area, and worsened by rest. On examination, there is mild reduction in the lumbar ROM without spasm or neurologic changes. Based on this examination there are minimal findings that would impair job related activities.

(R. 265). Dr. Kotzen's impressions were chronic low back pain; and lumbar disc disease and stenosis, degree and type undetermined. (R. 265).

On December 4, 2002, a Physical Residual Functional Capacity Assessment of the Plaintiff

was completed. (R. 266-273). The Plaintiff was found to be capable to occasionally lift and/or carry 20 pounds, and frequently lift and/or carry 10 pounds. Additionally, the assessment found that the Plaintiff could sit, stand, and/or walk (with normal breaks) 6 hours in an 8 hour workday and had no limitations in pushing and/or pulling. (R. 267). The assessment found that the Plaintiff had no postural, manipulative, visual, communicative or environmental limitations. (R. 268-271).

On February 14, 2003, the Plaintiff was seen at the North Dade Health Center with complaints of back pain. Tenderness was show at the L4-L5, x-rays were ordered and he was prescribed Vioxx 25mg. (R. 281). X-Rays taken of the lumbar spine revealed as follows:

> No evidence of compression fracture deformity. Disk space narrowing and end-plate sclerosis, as well as marginal osteophyte formation is present at L5-S1 level. There is evidence of extensive facet sclerosis, as well. Vascular calcifications are present anterior to the lumbar spine on lateral view. No blastic or lytic lesions are evident. Further imaging with MRI may be of value.

(R. 282).

On April 5, 2004, the Plaintiff was treated at Jackson Memorial Hospital with complaints of back pain. Gait was noted as "intact" and the impression was "chronic back pain." (R. 280). On July 7, 2004 and August 4, 2004, the Plaintiff received vitamin B12 injections for left hip and ankle pain. (R. 276-277).

The ALJ issued a report wherein she determined the Plaintiff to be not disabled as defined by the Social Security Act during the relevant time period. (R. 29). The ALJ determined that the Plaintiff suffered from severe impairments of back disorder with disc herniation at L4-L5 and L5-S1 and spondylitic changes, history of gout and alcohol abuse. (R. 21). The ALJ further found that the Plaintiff does not have an impairment or combination of impairments that meets or medically equals

one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR § 416.920(d)). (R. 24).

## II. LEGAL ANALYSIS

Judicial review of the factual findings in disability cases is limited to determining whether the record contains substantial evidence to support the ALJ's findings and whether the correct legal standards were applied. 42 U.S.C. section 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Kelley v. Apfel, 185 F.3d 1211, 1213 (11th Cir. 1999); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). "Substantial evidence" is more than a scintilla, but less than a preponderance and is generally defined as such relevant evidence which a reasonable mind would accept as adequate to support a conclusion. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

In determining whether substantial evidence exists, the court must scrutinize the record in its entirety, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995); Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988). The reviewing court must also be satisfied that the decision of the Commissioner correctly applied the appropriate legal standards. See, Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987). The court may not reweigh evidence or substitute its judgment for that of the ALJ, and even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. See, Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); Baker v. Sullivan, 880 F.2d 319, 321 (11th Cir. 1989).

The restrictive standard of review set out above applies only to findings of fact. No presumption of validity attaches to the conclusions of law found by the Commissioner, including the determination of the proper standard to be applied in reviewing claims. Brown v. Sullivan, 921 F.2d

1233, 1236 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). The failure by the Commissioner to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal. Cornelius v. Sullivan, 936 F.2d 1143, 1145-1146 (11th Cir. 1991); See also, Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

Social Security regulations establish a five-step sequential analysis to arrive at a final determination of disability. See, 20 C.F.R. section 404.1520; 20 C.F.R. section 416.920 (a)-(f).

The ALJ must first determine whether the claimant is presently employed. If so, a finding of non-disability is made, and the inquiry ends. 20 C.F.R. section 404.1520(b). In the second step, the ALJ must determine whether the claimant suffers from a severe impairment or combination of impairments. If such a finding is not made, then a finding of non-disability results, and the inquiry ends. 20 C.F.R. section 404.1520(c).

At step three, the ALJ compares the claimant's severe impairments to those in the listing of impairments. 20 C.F.R. section 404.1520(d), subpart P, appendix I. Certain impairments are so severe, whether considered alone or in conjunction with other impairments, that if such impairments are established, the regulations require a finding of disability without further inquiry into the claimant's ability to perform other work. See, Gibson v. Heckler, 762 F.2d 1516, 1518, n.1 (11th Cir. 1985). If the impairment meets or equals a listed impairment, disability is presumed, and benefits are awarded. 20 C.F.R. section 404.1520(d).

Step four involves a determination of whether the impairments prevent the claimant from performing his or her past relevant work. If the claimant cannot perform his or her past relevant work, then a prima facie case of disability is established and the burden of going forward with the

9

evidence shifts to the Commissioner to show, at step five, that there is other work available in the national economy which the claimant can perform. 20 C.F.R. section 404.1520(e)-(f).

The claimant bears the initial burden of proving that he is unable to perform previous work. See, Barnes v. Sullivan, 932 F.2d 1356, 1359 (11th Cir. 1991). The inability to perform previous work relates to the type of work performed, not to merely a specific prior job. See, Jackson v. Bowen, 801 F.2d 1291, 1293 (11th Cir. 1986).

It is well established that pain alone can be disabling. Walker v. Bowen, 826 F.2d 996, 1003 (11th Cir. 1987). However, the claimant's testimony of pain or other subjective symptoms standing alone, are not conclusive evidence of disability. See, Macia v. Bowen, 829 F.2d 1009, 1011 (11th Cir. 1987). A three part standard that must be applied to evaluate a claimant's complaints of pain or other subjective symptoms had been established by the Eleventh Circuit. This standard requires (1) evidence of an underlying medical condition, and (2) either (a) objective medical evidence to confirm the severity of the alleged pain or symptom arising from that condition, or (b) evidence that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain or symptom. See, Dyer v. Barnhart, 395 F.3d 1206 (11th Cir. 2005).

The Plaintiff contends that the ALJ erred in rejecting his pain testimony; ending the sequential evaluation process at step 4; and improperly determining the Plaintiff's residual functional capacity.

As to the Plaintiff's first contention, the ALJ determined that the Plaintiff suffered from severe impairments of back disorder with disc herniation at L4-L5 and L5-S1 and spondylitic changes, history of gout and alcohol abuse. (R. 21). The ALJ concluded, however, that there was "very limited objective support" in the record for the allegations of disability to the extent alleged. (R. 25). The ALJ based her determination on several factors. The ALJ stated that after the Plaintiff completed

two and a half months of treatment for back injuries sustained as a result of a motor accident, there was no further mention of back pain until the Plaintiff's consultative examination on November 25, 2002. (R. 25). The ALJ pointed out that during a hospital visit for "'occasional' pain from his right testicle, there was no mention of back pain. There was a specific mention of 'no joint pains.'" (R. 25). Further, the records showed a history of gout which was currently "stable". (R. 26).

> The ALJ discussed the results of the consultative examination which revealed:
>
>> On examination, there was no edema of the extremities. Straight leg raising was "painless" at 70 degrees bilaterally. The lumbosacral spine flexion was full at 90 degrees with 20-30 degrees of extension. There were no motor or sensory deficits.

(R. 25). The ALJ also stated that the consultative examination revealed only mild reduction in the lumbosacral range of motion and minimal findings that would limit job related activities. (R. 25).

The ALJ than looked at the next complaints of back pain which occurred several months later on February 14, 2003. An examination revealed no deformity of the back. An x-ray of the lumbar spine showed disc space narrowing and end plate sclerosis and "marginal" osteophyte formation at the L4-L5. (R. 25).

The ALJ continued her analysis of the objective medical evidence finding that no other complaint of back pain was made until fourteen months later when the Plaintiff complained of "on and off" back pain. During this visit it was noted that the Plaintiff wanted disability papers completed. The examination revealed decreased flexion, no misalignment of the spine, and gait was intact. (R. 25).

Additionally, the ALJ stated the lack of objective evidence regarding the Plaintiff's gout. While there was a clinical note from 2002 indicating a history of gout, the ALJ stated that "there is

11

nothing else regarding the gout in that note except that it was stable." (R. 26). The ALJ pointed out that aside from the Plaintiff's uric acid levels of 9.5 in 2000-2001, there is no medical evidence of treatment for gout after 2002.

The ALJ next addressed the lack of objective medical evidence with regards to the Plaintiff's alcohol abuse. She stated as follows:

> Next, the evidence of record sporadically mentioned claimant's alcohol abuse (Exhibit 1F, pages 6, 18 and 20). There is no other mention of the same, and no allegation or findings of any physical limitations related to same. During the October 6, 2005 hearing, the claimant testified that he last consumed alcohol two months ago --- a six pack of beer.

(R. 26).

The ALJ determined that the Plaintiff's statements concerning the intensity, duration and limiting effects of his symptoms were not entirely credible. (R. 24).

The ALJ also considered the Plaintiff's activities of daily living which included, driving; doing the laundry; cooking; sweeping his room; making his bed; and seeing his son and daughter three to four times per week. (R. 26-27).

The ALJ then considered the Plaintiff's subjective complaints namely the inability to work as a result of back pain. The ALJ made the following determination:

> The claimant has not received any epidural injections at any time, and no physical therapy since the 2 1/2 month period following the accident (February 2002). Vioxx, apparently was last prescribed on February 14, 2003 at the time he stopped working. (Exhibit 9F, page 7). He has mostly relied on over the counter medication for pain and no side effects of medication are alleged or documented. Further, he reported an array of activities at the hearing, including the performing household chores, driving his car and socializing with his son and daughter. The activities are inconsistent with the complaints of the severity of pain and discomfort alleged. Thus, his allegations are not

fully supported or persuasive.

(R. 28).

While, an ALJ may not reject a plaintiff's subjective complaints of pain simply by the lack of objective evidence, the allegations of a severe impairment should be supported by medically acceptable clinical and laboratory diagnostic techniques and allegations of pain should be weighed with the overall record which includes clinical data, testimony, demeanor at the hearing, frequency of treatment, response to treatment, use of medications, daily activities, motivations, credibility and residual functional capacity. Watson v. Heckler, 738 F. 2d 1169, 1172-1173 (11th Cir. 1984).

If an ALJ rejects a claimant's testimony on credibility grounds, the ALJ must explicitly state as much and give adequate reasons for that determination. Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995). There is no requirement that the ALJ refer to every piece of evidence, but the credibility determination must not be "a broad rejection." Dyer, 395 F.3d at 1211. Failure to set out the reasons for the discrediting of subjective pain testimony mandates, as a matter of law, that the testimony be accepted as true. Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002).

This Court finds that the ALJ's decision to reject the Plaintiff's subjective complaints is supported by the substantial evidence contained in the record.

The Plaintiff's next point of contention is that the ALJ erred in reaching her final RFC determination. In addition to the aforementioned evidence to which the ALJ gave consideration, the ALJ considered the Plaintiff's testimony wherein he testified that he performed substantial gainful activity stocking cases of soda and/or beer, 5-6 days a week, 8-9 hours a day for almost a year. (R. 27).

The record also contained a Physical Residual Functional Capacity Assessment form which

found that the Plaintiff could occasionally lift and/or carry 20 pounds, and frequently lift and/or carry 10 pounds. Additionally, the assessment found that the Plaintiff could sit, stand, and/or walk (with normal breaks) 6 hours in an 8 hour workday and had no limitations in pushing and/or pulling. (R. 266). The assessment found that the Plaintiff had no postural, manipulative, visual, communicative or environmental limitations. (R. 268-271).

The ALJ concluded that the Plaintiff retained the maximum functional ability to:

> ... sit, stand or walk 8 hours per activity (at least 2 hours at one time per activity) in an eight-hour workday. In addition, he is able to lift, carry, push or pull 20 pounds occasionally and 10 pounds frequently. The undersigned further finds that there are no nonexertional restrictions on functions such as reaching, handling, seeing, hearing and speaking. The claimant would need to avoid climbing high ladders, scaffolds and ropes but he could occasionally climb ramps, stairs, and medium ladders. He could occasionally crouch, kneel and crawl and stoop to the floor (but could flex his spine fifty percent of normal frequently). He could frequently balance. He could perform fine and gross manipulations repetitively with both hands. Further, he would be able to tolerate all environmental conditions except he would need to avoid excessive vibration such as from a jack hammer. Finally, he had no mental limitation that would have an adverse impact on his capacity to make occupational and performance adjustments to jobs entailing simple, detailed and/or complex instructions.

(R. 28). After looking at the record in its entirety, the ALJ concluded that the Plaintiff retained the residual functional capacity to perform the requirements of a limited range of light work as defined by Social Security Ruling 83-10. (R. 28).

The Court finds that the substantial evidence contained in the record supports the ALJ's finding that the Plaintiff retained the residual functional capacity to perform the requirements of a limited range of light work.

The Plaintiff's final contention is that the ALJ erred in determining that the Plaintiff could

return to his previous work.[3]  Once the ALJ determined the Plaintiff's RFC she posed several hypothetical questions to the VE to assist in the determination as to whether the Plaintiff could return to his prior work.

> A vocational expert or specialist may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy. Such evidence may be helpful in supplementing or evaluating the accuracy of the claimant's description of his past work.

20 C.F.R. § 416.960(b)(2).  After some confusion in the initial questioning, the VE testified that, if the Plaintiff would stand for two hours, then receive a break for 10-15 minutes, the Plaintiff would be able to perform work as a cashier. (R. 346).

The issue raised by the Plaintiff which bares consideration is whether the ALJ erred in only focusing on part of the Plaintiff's past relevant work and excluding portions which the Plaintiff would not be able to perform given the ALJ's RFC. It is the Plaintiff's contention that the ALJ improperly bifurcated the Plaintiff's prior work and that the Plaintiff is not capable of performing certain jobs such as stocking the cooler with cases of beer and soda, or mopping and buffing the floor of the store prior to the completion of a shift.

> The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

SSR 96-8p (4).

---

[3] The Plaintiff also contends that in accordance with the medical vocational guidelines, the ALJ erred in not finding the Plaintiff disabled at Step 5. As this Court has determined that the ALJ correctly ended the evaluation at Step 4, this argument is rendered moot.

According to Social Security Rulings, three possible tests for determining whether a claimant retains the capacity to perform his or her past relevant work are as follows:

> 1. Whether the claimant retains the capacity to perform a past relevant job based on a broad generic, occupational classification of that job, e.g., "delivery job," "packaging job," etc. Finding that a claimant has the capacity to do past relevant work on the basis of a generic occupational classification of the work is likely to be fallacious and unsupportable. While "delivery jobs," or "packaging jobs," etc., may have a common characteristic, they often involve quite different functional demands and duties requiring varying abilities and job knowledge.
>
> 2. Whether the claimant retains the capacity to perform the particular functional demands and job duties peculiar to an individual job as he or she actually performed it. Under this test, where the evidence shows that a claimant retains the RFC to perform the functional demands and job duties of a particular past relevant job as he or she actually performed it, the claimant should be found to be "not disabled."
>
> 3. Whether the claimant retains the capacity to perform the functional demands and job duties of the job as ordinarily required by employers throughout the national economy. (The *Dictionary of Occupational Titles* (DOT) descriptions can be relied upon--for jobs that are listed in the DOT -- to define the job as it is *usually* performed in the national economy.) It is understood that some individual jobs may require somewhat more or less exertion than the DOT description. A former job performed in by the claimant may have involved functional demands and job duties significantly in excess of those generally required for the job by other employers throughout the national economy. Under this test, if the claimant cannot perform the excessive functional demands and/or job duties actually required in the former job but can perform the functional demands and job duties as generally required by employers throughout the economy, the claimant should be found to be "not disabled."

SSR 82-61.

The ALJ posed various hypothetical questions to the VE which incorporated all of the Plaintiff's restrictions along with the job duties to which the Plaintiff testified. With regard to the

Plaintiff's prior work at Hearn's Food Store, the VE concluded that the Plaintiff would be able to perform his job as a cashier, but not as a stocking clerk or cleaner and that he could perform it as usually performed in the national economy and as the Plaintiff performed it. (R. 347, 354).

Based on the record and the VE's testimony, the ALJ concluded as follows:

> The claimant is capable of performing past relevant work as a cashier, and a front (but not back room) store clerk. This work does not require performance of work-related activities precluded by the claimant's residual functional capacity (20 C.F.R. § 416.965).

(R. 29). The Court does not agree with the Plaintiff's contention that the ALJ improperly bifurcated the Plaintiff's prior work and finds the relevant facts in this case distinguishable from the cases cited by the Plaintiff. The VE was posed questions containing all the Plaintiff's job duties and restrictions, and she determined that the Plaintiff could perform his prior relevant work as he performed it and as it is normally performed in the national economy. The ALJ properly concluded that the Plaintiff was "not disabled" in accordance with SSR 82-61 and her decision is supported by the substantial weight of the evidence.

## III. CONCLUSION

Based on the foregoing, this Court finds that the decision by the ALJ is supported by substantial evidence and that the correct legal standards were not applied. Accordingly, it is ORDERED AND ADJUDGED as follows:

(1) The Motion for Summary Judgment filed by the Plaintiff (D.E. #18) is **DENIED**.

(2) The Motion for Summary Judgment filed by the Defendant (D.E. #27) is **GRANTED**.

(3) The decision of the Commissioner is **AFFIRMED**.

(4) Pursuant to Rules 54 and 58 of the Federal Rules of Civil Procedure final judgment is

hereby entered in favor of the Defendant, Michael J. Astrue, Commissioner of Social Security, and against the Plaintiff, Clinton Moore.

All pending motions are deemed **MOOT** and this case is hereby **CLOSED**.

**DONE AND ORDERED** this __8__ day of April, 2008.

                                        ROBERT L. DUBÉ
                                        UNITED STATES MAGISTRATE JUDGE

cc: Carole M. Fernandez, AUSA
     Gary Palmer, Esq.